DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
IN THE DISTRICT OF IDAHO

| | |
|---|---|
| STEPHIN SWANSON,<br><br>          Plaintiff,<br><br>v.<br><br>TRINITY TRAILER MFG., INC.,<br><br>          Defendant. | Case No. 1:22-cv-00154<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $402 |

Plaintiff, Stephin Swanson, by and through his counsel of record, Casperson Ulrich Dustin PLLC, and as a cause of action against Defendant Trinity Trailer Mfg., Inc., complains and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*; and the common law of the State of Idaho.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 1367.

1 - COMPLAINT AND DEMAND FOR JURY TRIAL

3. Venue in this action properly lies in the United States District Court for the District of Idaho, pursuant to 28 U.S.C. § 1391(b) because the defendant resides in this judicial district and pursuant to 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

4. Plaintiff Stephin Swanson ("Plaintiff") is a male citizen and resident of the United States of American, who resides in Bannock County, Idaho.

5. Defendant Trinity Trailer Mfg., Inc. ("Defendant") is an Idaho corporation with its principal place of business in Boise, Idaho.

6. At all times relevant to this Complaint, Defendant regularly employed fifteen or more persons whose services were performed in the State of Idaho and was engaged in an industry affecting commerce.  Consequently, Defendant's conduct is properly regulated by Idaho Code § 67-5901, *et seq.*; and 42 U.S.C. § 12101, *et seq.*

## FACTS COMMON TO ALL COUNTS

7. Plaintiff realleges and incorporates by reference paragraphs 1 through 6 as though fully set forth herein.

8. Plaintiff applied for a Repair Service Technician job at Defendant's Pocatello, Idaho, location in or around late October/early November 2020.

9. When Plaintiff applied for the Repair Service Technician job, he told manager Brian Fletcher that he was seeking the Repair Service Technician job because he was moving away from welding due to a medical condition.  Plaintiff explained to Fletcher that performing welding work regularly causes his medical condition to be exacerbated and cause him injury and that he could not continue to perform welding work on a regular basis because of this.

10. Fletcher stated that he understood and agreed that Plaintiff would not be required to perform welding tasks aside from the occasional, one-off assignment.

11. Fletcher offered Plaintiff the Repair Service Technician job and explained that because Plaintiff would not be working as a welder, Defendant could only offer him $20.00 per hour, as opposed to the $30.00 per hour plus that Defendant pays welders.

12. Though Plaintiff would have liked to have earned a higher hourly wage, because he knew his medical condition would only be exacerbated by welding and that he could not perform welding work on a regular basis without causing severe damage to his body, the $20.00 per hour for the Repair Service Technician position was acceptable to him as long as he did not have to regularly perform welding work.

13. Based upon Fletcher's statements that he would only very occasionally do welding, Plaintiff accepted the Repair Service Technician job and relocated his family from Montana to Pocatello, Idaho.

14. After Plaintiff began working for Defendant, management increasingly assigned welding tasks to Plaintiff, despite him telling them that it aggravated his medical condition.

15. Plaintiff repeatedly informed management, including Shop Foreman Jason (last name unknown), that he began having significant pain and problems with his medical condition due to the tasks he was being assigned, but management continued to require Plaintiff to perform the welding work.

16. Because Plaintiff continued to be assigned welding work, he asked management (including Jason) for an accommodation of different welding equipment that would at least cause less aggravation to his condition.  Management refused because they did not want to pay for the equipment.

17. Plaintiff also asked management for a raise at his 60-day evaluation since he was being required to perform welding work instead of service technician work. Management refused to give Plaintiff a raise to conform with its welder wages, and instead told Plaintiff they would give him a $.50 per hour raise.

18. Because of Defendant's refusal to accommodate Plaintiff and have him perform the work they hired him to perform, Plaintiff's medical condition became aggravated to the point that it necessitated surgery.

19. Plaintiff notified Defendant in April 2021 that he would need surgery and time off to recover. He worked with HR and management to find a time for his surgery that would cause the least amount of disruption to Defendant's operations.

20. Plaintiff had surgery for his medical condition on or about June 3, 2021, and his doctor ordered a month of light duty for him to recover.

21. Instead of putting Plaintiff on light duty, Mr. Fletcher put Plaintiff on leave because, as Mr. Fletcher stated to Plaintiff, Defendant did not want to pay for Plaintiff to perform light duty work.

22. On or about June 17, 2021, Plaintiff's doctor told him that he would need an additional surgery, and scheduled Plaintiff's surgery for June 28, 2021.

23. Plaintiff informed Mr. Fletcher of his need for the second surgery and associated time off.

24. The following day, Mr. Fletcher told Plaintiff he was being terminated because he could not perform his job duties, but that he was welcome to reapply for his position when he was fully released and recovered.

25. On or about July 28, 2021, Plaintiff dually filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Idaho Human Rights Commission. On or about

September 28, 2021, Plaintiff dually filed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission and the Idaho Human Rights Commission.

26. On or about February 9, 2022, Plaintiff received his Notice of Right to Sue letter. Plaintiff has exhausted his administrative remedies.

## COUNT I
## VIOLATION OF THE ADA/IDAHO HUMAN RIGHTS ACT
### (Failure to Accommodate/Disability Discrimination)

27. Plaintiff realleges and incorporates by reference paragraphs 1 through 26 above, as though fully incorporated herein.

28. Plaintiff has a disability within the meaning of the ADA/IHRA in that he has an impairment that impacted his musculoskeletal system.

29. Plaintiff has a record of a disability within the meaning of the ADA/IHRA.

30. Defendant perceived Plaintiff as having a disability which is not transitory or minor.

31. Plaintiff's disability substantially limits or limited his major life activities and/or major bodily functions, including but not limited to his ability to grasp, use his arms, sleep, and work.

32. Plaintiff's disability required that Plaintiff be accommodated by complying with work restrictions implemented by his doctor, including light duty, and allowing him time off for surgery and recovery.

33. Plaintiff was a qualified individual able to perform the essential functions of his job with or without reasonable accommodations.

34. Defendant failed to accommodate Plaintiff by refusing to permit him to continue working with accommodations and to allow him time off for the second surgery.

35. Defendant took action against Plaintiff by, among other things, refusing to accommodate Plaintiff and terminating his employment.

36. As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation based upon the discrimination he experienced. Further, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to him.

## COUNT II
## VIOLATION OF THE ADA/IDAHO HUMAN RIGHTS ACT
**(Retaliation)**

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 36 above, as though fully incorporated herein.

38. Plaintiff engaged in a protected activity by seeking accommodations in the workplace for his disability.

39. Defendant retaliated against Plaintiff for engaging in protected activity under the ADA and Idaho Human Rights Act. Defendant's retaliation against Plaintiff includes but is not limited to terminating Plaintiff's employment and cancelling his benefits so his surgery was not covered under Defendant's benefits plan.

40. As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job opportunities. Plaintiff is therefore entitled to damages in an amount to be proven at trial, as well as any equitable remedies available to him.

## COUNT III
## FRAUDULENT HIRING

41. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 above, as though fully incorporated herein.

42. Defendant made a statement or representation of fact through Fletcher when he told Plaintiff that the Repair Service Technician job for which Plaintiff was hired would not require Plaintiff to regularly engage in welding as part of his job duties, and that Plaintiff would only have to perform welding work occasionally, for one-off assignments.

43. Defendant's statement through Fletcher to Plaintiff regarding the job duties he would not be required to perform regularly was false.

44. Defendant's statement through Fletcher to Plaintiff regarding the job duties he would not be required to perform regularly was material to Plaintiff's decision to accept the Repair Service Technician job with Defendants, accept wages of $20.00 per hour instead of the $30.00 per hour paid to welders, and relocate from Montana to Pocatello.

45. Defendant, through Fletcher, knew of the statement's falsity or was ignorant of the truth.

46. Defendant, through Fletcher, intended that Plaintiff rely upon the statement.  In fact, Defendant, through Fletcher, knew Plaintiff was relying upon the representation because his medical condition was exacerbated by welding.

47. Plaintiff was ignorant of the falsity of the statement.

48. Plaintiff relied upon the statement made by Defendant through Fletcher so much so that he moved from Montana to Pocatello, Idaho.

49. Plaintiff justifiably relied upon the statement made by Defendant through Fletcher.

50. Plaintiff was injured by the false statement made by Defendant through Fletcher, in that he was required to perform welding as part of his daily job activities and was paid $10.00 per hour less than he should have been, suffered aggravation of his medical condition resulting in the need for time off and surgery, and was ultimately fired due to Defendant's failure to accommodate his medical condition.

51. As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered and will continue to suffer, a loss of earnings, employment benefits, and job opportunities. Plaintiff is therefore entitled to damages in an amount to be proven at trial, as well as any equitable remedies available to him.

## COUNT IV
## PROMISSORY ESTOPPEL

52. Plaintiff realleges and incorporates by reference paragraphs 1 through 51 above, as though fully incorporated herein.

53. Plaintiff relied upon Defendant's promise, through Fletcher, that the Repair Service Technician job for which Plaintiff was hired would not require Plaintiff to regularly engage in welding as part of his job duties, and that Plaintiff would only have to perform welding work occasionally, for one-off assignments.

54. Plaintiff suffered substantial economic loss as a result of his reliance upon Defendant's promise as a result of such reliance.

55. Plaintiff's loss was or should have been foreseeable by Defendant.

56. Plaintiff's reliance upon Defendant's promise was reasonable.

57. As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered and will continue to suffer, a loss of earnings, employment benefits, and job opportunities. Plaintiff is therefore entitled to damages in an amount to be proven at trial, as well as any equitable remedies available to him.

## ATTORNEYS' FEES

58. As a further direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has been compelled to retain the services of counsel and has incurred and will continue to incur costs and attorney's fees. Plaintiff is therefore entitled to attorney's fees and costs incurred in

pursuing this action pursuant to 42 U.S.C. § 2000e-5; 42 U.S.C. § 12205; 42 U.S.C. § 1988; and Idaho Code § 12-120(3). Plaintiff is entitled to an award of his attorneys' fees and costs in this matter in an amount to be determined upon judgment.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

1. For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial and any available equitable remedies;

2. For punitive damages;

3. For pre-judgment interest;

4. For attorney's fees pursuant to status and costs of suit; and

5. For such other and further relief as the Court deems just and proper.

Dated this 7th day of April, 2022.

/s/
Amanda E. Ulrich
CASPERSON ULRICH DUSTIN PLLC